## Ellison v. Ellison's Adm'r et al.

Oct. 3, 1944.

Carl F. Eversole for appellant.

E. B. Wilson for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

W. D. Ellison died intestate in Bell County in March, 1940. Surviving him were his widow by his second marriage and their eight children, and the appellant, John Ellison, a son by his first marriage. Ellison's estate consisted of some $10,000 in cash and various shares of stock in mining companies, some of which were worthless at the time of his death. Shortly after his father's death, the appellee, a son by the second marriage, qualified as administrator of the estate. Within a few days thereafter he distributed all but $1000 of the cash to his mother and his brothers and sisters. In January, 1941, he filed his final settlement, which was approved and the bondsman was discharged. There remained in the former administrator's hands however, certain shares of mining stock, most of which were deemed to be worthless.

John Ellison instituted this action in 1943 against the administrator and his bondsman, Dr. Charles B. Stacey, for the purpose of surcharging the settlement and obtaining his share of the estate. He charged he had been fraudulently deprived of his share. The charge of fraud was denied and the former administrator set up that he did not know of the existence of the appellant until after the estate had been finally settled. On final hearing the chancellor found the estate had been distributed in good faith by the administrator before he had any knowledge of the existence of the appellant, but he ordered that the shares of mining stock remaining in his hands be turned over to the appellant, which was done. The appeal is from that judgment.

Fred Ellison testified he did not know of his father's previous marriage and it was not until after he had filed his final settlement that he learned John Ellison was his half-brother. He said his father was a quiet man who seldom discussed his private affairs. Dr. Stacey testified he did not know of the existence of John Ellison until after the estate had been settled and he had been discharged as bondsman. The appellant's proof showed he was a legal heir of W. D. Ellison; in June, 1940, he learn-

ed of his father's death; he wrote to the county clerk of Bell County and asked for a list of his father's real estate and inquired whether there was a will and the clerk advised him it would be best for him to get a lawyer to attend to his affairs; he employed an attorney in Richmond, Kentucky, where he made his home, and this attorney corresponded with one or more attorneys in Bell County; the first attorney whom he employed subsequently advised him he could not handle the case and he then employed his present attorney, the Hon. Carl F. Eversole, of Richmond; Mr. Eversole wrote several letters to Bell County and made certain inquiries for him; he did not go to Bell County himself to inquire as to his father's estate; he did not file a claim with the administrator or make any effort to contact him; and it was not until 1943 that suit was filed. It can be seen, therefore, the proof failed completely to show that Fred Ellison knew of the existence of the appellant before he filed his final settlement. Therefore, the charge of fraud was groundless. On the other hand, the appellant's testimony showed he knew of his father's death a few months after its occurrence. True it is he began to make inquiries as to his father's estate, but we fail to see how the administrator and his bondsman should be charged with the appellant's ineffectual manner of inquiring into his rights.

It·is pointed out in 21 Am. Jur., Executors and Administrators, section 227, that it is the duty of an administrator to guard against error in the distribution of an estate and to exercise the greatest possible care to see that the names of the persons entitled under the law to receive the estate are included in the distribution. But can it be said this record shows that Fred Ellison did not exercise such care? We think not.

As a general equitable proposition, where one of two innocent persons must suffer, the one whose negligence brought about the condition must bear the burden. If negligence is to be attributed to either party to this action, certainly it must fall upon the appellant.

Emphasis is placed upon the early distribution made by the administrator, and the fact that he required no refunding bond. We note, however, that the administrator retained in his hands approximately $1000 to cover any claims against the estate. Any refunding bond which he might have required would have been for his protection and the benefit of creditors, and would have become

ineffective after the final settlement was made and approved. KRS 396.130; Wilkinson v. Rosser's Ex'r, 104 S. W. 1019, 31 Ky. Law Rep. 1262. It follows, therefore, we are of the opinion the appellant's claim against the former administrator and his bondsman is without merit.

Judgment affirmed.